UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| JESSIE JONES #260563, | |
| Plaintiff, | Case No. 2:08-cv-207 |
| v. | HON. R. ALLAN EDGAR |
| FERNANDO FRONTERA, et al., | |
| | **OPINION** |
| Defendants. | |

**I. Facts**

Plaintiff Jessie E. Jones, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Dr. Fernando Frontera, Mary Rose Galloway, R.N., and Unknown Salmi, R.N. Plaintiff's complaint alleges that on May 1, 2006, Plaintiff sustained an injury to his right foot and was taken to an off-site hospital for evaluation. An examination revealed that Plaintiff's foot was broken, and the doctor ordered a shoe boot, crutches and pain medication, which Plaintiff never received. Approximately one month later, x-rays revealed that Plaintiff's broken foot showed little signs of healing. Plaintiff was examined by an off-site doctor, who placed a cast on his foot, which was to be removed in 6-8 weeks. Plaintiff was given crutches, but never received the pain medication that the doctor had ordered.

On June 27, 2006, while using his crutches in the yard, Plaintiff fell and injured his left foot. Plaintiff claims that when he returned to his unit after the fall, he immediately informed unit staff that he needed medical attention for his foot. Plaintiff states that staff contacted Defendant Salmi, who reported to Plaintiff's cell after approximately one hour without a wheelchair. Defendant

Salmi refused to take Plaintiff out of his cell or to examine him in any way. Plaintiff alleges that Defendant Salmi spoke to him through his cell door for five minutes, and then left. Plaintiff contends that after not receiving medical attention from Defendant Salmi on the second shift, he waited for third shift to arrive and again requested attention. Plaintiff states that a Corrections Officer contacted Defendant Galloway, who failed to respond to the request for medical attention. Plaintiff asserts that he was left in his cell, denied food, showers, and pain medication, and was forced to defecate and urinate on himself because of his inability to stand or walk. Plaintiff was not seen by medical personnel for more than 24 hours. He does not indicate the nature or extent of his left-foot injury nor the treatment, if any, that he received.

Plaintiff also claims that Defendant Frontera removed his right foot cast two months after the prescribed removal date. As a result, Plaintiff suffers permanent foot deformities, numbness and pain, for which he has never received treatment. After filing grievances against Defendant Frontera and others on the medical staff, Defendant Frontera cancelled Plaintiff's special shoe accommodation that had been ordered. Defendant Frontera also cancelled Plaintiff's treatment for a long-standing skin condition.

Plaintiff claims that defendants' actions constituted cruel and unusual punishment and were retaliatory. Plaintiff is seeking compensatory and punitive damages, as well as injunctive relief.

## II. Analysis

### A. Standard of Review

Presently before the Court are the the Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #32 and #53) filed by Defendants Salmi and Galloway. Plaintiff has filed responses (docket #56, #65, and #70) and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial

and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Failure to exhaust administrative remedies

Initially, Defendant Galloway states that she is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761

(6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the

administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response

was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendant Galloway contends that the only grievance in which she is specifically named by Plaintiff is Grievance No. LMF 06-07-2558-28a, which was rejected as duplicative to Grievance No. LMF 06-07-2552-12e4. (Defendant Galloway's Exhibits C and D.) Both grievances deal with the alleged failure to provide Plaintiff with medical attention on June 27, 2006. However, in Grievance No. LMF 06-07-2552-12e4, only names Defendant Salmi, while Grievance No. LMF 06-07-2558-28a names Defendant Galloway. A review of the attachments to Defendant Galloway's brief show that Grievance No. LMF 06-07-2558-28a was indeed rejected as duplicative. In the responses to this grievance, it is noted that the alleged denial of medical care had previously been addressed in the previous grievance. Plaintiff appealed this rejection all the way to step III. Plaintiff need not take any further action to exhaust his administrative remedies. Therefore, the court concludes that Defendant Galloway is not entitled to summary judgment for lack of exhaustion.

**C. Eighth Amendment**

Defendants Galloway and Salmi assert that they are entitled to summary judgment because their conduct did not violate Plaintiff's Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In a progress note dated June 27, 2006, at 6:45 p.m., Defendant Salmi noted that Plaintiff had reported breaking his right foot. Defendant Salmi saw Plaintiff at his cell:

> Inmate has a walking cast on his left foot & is currently using crutches. Inmate states that he fell while outside on the yard today & broke his other foot. Upon assessment, inmate stood on his left foot & stuck his right foot through the upper food slot for me to see it. No evidence of new trauma or injury @ this time. There is an area on the right foot which is congruent with findings from an old injury in 1999 which includes a bone spur on proximal epiphyses of the 5th metatarsal bone, soft tissue swelling over the dorsum & lateral aspect of the right foot. He then refused to come out of his cell for further assessment.

(Defendants' Exhibit A2, p. 1.) Defendant Salmi noted that Plaintiff was not suffering from any new injuries and that Plaintiff was offered ice and an ace wrap, but that he refused. Defendant Salmi observed that Plaintiff had ibuprofen in his cell, and encouraged Plaintiff to elevate his foot. Plaintiff was told that he had been listed to see the medical service provider the next day, but Plaintiff refused to acknowledge Defendant Salmi, stating that he would just get another nurse, and to "never mind." (Defendants' Exhibit A2, p. 1, and Exhibit H, ¶¶ 4-5.)

In her affidavit, Defendant Galloway attests that she received a call from Plaintiff's unit at 10:10 p.m. on June 27, 2006, and was informed that Plaintiff had broken his right foot. Defendant Galloway then checked the telephone log and noted that Plaintiff had been seen by a nurse approximately three hours earlier and had been scheduled to see a doctor the next day. Defendant Galloway assumed the call from the unit was to check whether Plaintiff's injury had been reported, rather than to report any new issues with regard to Plaintiff's injury. Defendant Galloway is not responsible for feeding Plaintiff or providing him with showers, and notes that there is no mention that Plaintiff was found in his own urine and feces when removed from his cell. (Defendants' Exhibit A, ¶¶ 3-8.)

Defendants also assert that prior to the June 27, 2006, accident, Plaintiff had been walking on his broken left foot. A progress note dated May 19, 2006, states:

> Received a call from yard officer regarding inmate wearing white tennis shoes while working on the yard crew. Inmate stated that he needed to wear them because he had an ace bandage wrapped around his foot for a broken foot that happened 4-30-06. Yard officer is wondering if inmate is laid in from work. CRV shows that inmate turned in orthopaedic shoe & crutches on 5-3-06; inmate noncompliant with medical treatment recommended for foot fracture. Will lay in from work until seen by [medical service provider] on 5-23-06.

(Defendants' Exhibit A-2, p. 5.)

The step II response to grievance LMF-06-07-2552-12E4 states that Plaintiff was seen by the medical service provider on June 28, 2006, had an x-ray which confirmed a non-displaced fracture, was referred to an orthopedic specialist, and had a cast applied. (*See* attachments to Plaintiff's Brief, docket #71.)

In response to Defendants' motions for summary judgment, Plaintiff states that he did not come out of his cell to be examined by Defendant Salmi because he could not walk. Plaintiff states that he requested a wheelchair and that Defendant Salmi's refusal to provide him with such constituted deliberate indifference. However, the record in this case shows that Plaintiff received medical attention following his injury, and was scheduled to see the doctor on the following day. Plaintiff had ibuprofen in his cell and was instructed to elevate his leg. Plaintiff was equipped with a walking cast and crutches at the time of his injury. The record shows that Plaintiff was standing on his left foot at the time of the injury to his right foot, so that he could have gotten himself to the toilet. In addition, Plaintiff fails to explain why he did not ask unit staff for assistance using the toilet, if he was experiencing difficulty during the night. Defendants Galloway and Salmi are not responsible for assisting Plaintiff with use of the toilet, or for providing him with meals and / or

showers. At the worst, Defendants' conduct caused Plaintiff to have to wait until the next day to have an x-ray of his foot. As noted above, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). In this case, Plaintiff was evaluated at his cell, scheduled to see the doctor, and received appropriate treatment for his injured foot within 24 hours. The court concludes that Defendants Salmi and Galloway did not violated Plaintiff's Eighth Amendment rights.

### D. Retaliation

In his complaint, Plaintiff asks for injunctive relief requiring Defendants to "refrain from retaliating against Plaintiff in the form of withholding medical treatment." Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted by Defendants, Plaintiff has not alleged any specific facts in support of this claim. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598

F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. Accordingly, his speculative allegation fails to state a claim.

### E. Eleventh Amendment

Defendants Salmi and Galloway assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir.
(continued...)

of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

### F. Qualified immunity

Defendants Salmi and Galloway also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly

---

[1](...continued)
1994).

established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants Salmi and Galloway did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

### G. Plaintiff's motions

Plaintiff seeks a preliminary injunction and / or restraining order asserting that Defendants are interfering with his legal mail (docket #24). Plaintiff claims that he is not receiving his incoming mail on the date that it arrives at the prison and that he is not being given free access to the law library. However, as noted above, Plaintiff has filed responses to Defendants' motions (docket #56, #65, and #70), as well as numerous other pleadings. Therefore, it does not appear as if Plaintiff has been impeded in his ability to prosecute this action. Accordingly, the court will deny this motion.

Plaintiff has also filed a motion for copies of his exhibits to the response to Defendant Galloway's motion for summary judgment. However, Plaintiff fails to specify what documents he sought to have copied. In addition, the court notes that Plaintiff's response to Defendant Salmi's motion for summary judgment, in which he asserts the same arguments, includes exhibits in support of Plaintiff's assertions (docket #70 and #71). Therefore, Plaintiff's motion for copies (docket #63) is properly denied.

Finally, in Plaintiff's motion to strike the May 28, 2009, reply to Plaintiff's responsive pleadings (docket #68), Plaintiff asserts that Defendant Frontera's reply to Plaintiff's response to the February 24, 2009, motion to dismiss should be stricken as immaterial. However, Defendant Frontera's February 24, 2009, motion to dismiss was denied on September 22, 2009 (docket #83). Accordingly, Plaintiff's motion to strike (docket #68) is properly denied as moot.

### III. Conclusion

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to the motions for summary judgment filed by Defendants Salmi and Galloway. Accordingly, the motions for summary judgment filed by Defendants Salmi and Galloway (docket #32 and #53) will be granted.

In addition, Plaintiff's pending motions (docket #24, #63, and #68) are properly denied.

An Order consistent with this Opinion will be entered.


Dated: 2/22/2010                                           */s/ R. Allan Edgar*
                                                                                     R. ALLAN EDGAR
                                                                                     UNITED STATES DISTRICT JUDGE