UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JESSE JONES,

                Plaintiff,                      Case No. 2:08-cv-207

v.                                       Honorable R. Allan Edgar

FERNANDO FRONTERA, et al.,

                Defendants.

_____/

**OPINION**

Plaintiff Jesse Jones, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants R. Fernando Frontera, Mary Rose Galloway, R.N., and Unknown Salmi, R.N. Only Defendant R. Fernando Frontera remains as a defendant in this case. Defendant Frontera moves for summary judgment and Plaintiff moves for summary judgment.

Plaintiff claims that Dr. Frontera violated his Eighth Amendment right to medical care and his First Amendment right to be free from retaliation. Plaintiff complains that Dr. Frontera failed to timely remove the casts from his broken feet, which caused unnecessary permanent injury and pain. Further, Plaintiff complains that Dr. Frontera refused to treat Plaintiff's skin condition in reprisal for Plaintiff's grievance filings. Plaintiff was confined at Alger Maximum Correctional Facility (LMF) from November 9, 2001, until he transferred to Marquette Branch Prison on November 21, 2008. Dr. Frontera was employed by Correctional Medical Services, Inc. as a physician providing care for prisoners at LMF from mid June 2006, until June 2008.

On April 30, 2006, Plaintiff fractured a bone in his left foot. Plaintiff was provided with crutches, a hard sole cast shoe and Motrin for pain. Plaintiff was given Ibuprofen on a later date. On June 9, 2006, Plaintiff was seen by nurse Blackford for complaints of a rash that started on his hands and then allegedly spread to his genital area. Nurse Blackford found multiple white areas on Plaintiff's genital area. On June 20, 2006, Plaintiff was placed in a short leg cast by orthopedic specialist Dr. Granzhorn. In his notes Dr. Granzhorn wrote "RTC 5 weeks." Plaintiff believes that RTC stands for "Remove The Cast." Defendant states that RTC is an abbreviation for "Return to Clinic." Plaintiff indicates that Defendant was deliberately indifferent for not following Dr. Granzhorn's order to remove the cast within 5 weeks.

On June 21, 2006, Dr. Frontera conducted a follow-up examination of Plaintiff. This was Dr. Frontera's first contact with Plaintiff. Dr. Frontera prescribed crutches and Motrin for pain. Dr. Frontera noted that he would order a follow-up with orthopedic specialist Dr. Granzhorn in five weeks. On June 26, 2006, Dr. Frontera examined Plaintiff for his skin rash complaints. Dr. Frontera noted "white shin well delimited areas groin with itch marks." Plaintiff was diagnosed with dermatomicosis and given lotrimin ointment to apply topically.

On June 27, 2006, Plaintiff fell in the yard and fractured his right foot. Plaintiff was initially examined by a nurse who indicated that Plaintiff refused to come out of his cell. On June 29, 2006, Plaintiff was examined by Dr. Frontera who ordered an x-ray of Plaintiff's right foot. Plaintiff was provided with Tylenol and Motrin, as well as a wheel chair detail. The x-ray revealed a fracture in Plaintiff's right foot. Plaintiff saw Dr. Ganzhorn the next day. Plaintiff's right foot was placed in a short leg cast. Dr. Granzhorn noted that a follow-up of the right foot would occur when Plaintiff returned for a check of his left foot.

On July 11, 2006, Dr. Frontera noted that Plaintiff's injuries were due to excessive exercise. On July 13, 2006, Dr. Frontera's request for physical therapy for Plaintiff when his casts were removed was approved. After reviewing Plaintiff's chart on July 31, 2006, Dr. Frontera requested a consultation for Plaintiff with Dr. Granzhorn for the removal of the casts. The request was approved and Plaintiff was scheduled for a follow-up on September 5, 2006. It was noted that the authorization "[d]id not comply with [the] requested three weeks from July 31, 2006," for the appointment. Plaintiff was seen by Dr. Granzhorn on September 5, 2006. His casts were removed. Dr. Granzhorn told Plaintiff to resume full weight bearing, but to refrain from running or jumping for four weeks. Plaintiff reported that he felt fine.

Plaintiff did not attend his next two appointments scheduled with Dr. Frontera on September 6, and September 11, 2006. Plaintiff attended a physical therapy session on September 15, 2006. Dr. Frontera examined Plaintiff on September 18, 2006, and reviewed Dr. Granzhorn's notes and the x-rays that had been taken. Plaintiff was provided with Tylenol. Plaintiff continued with physical therapy.

On September 27, 2006, Dr. Frontera examined Plaintiff for his skin rash complaints. Dr. Frontera assessed Plaintiff with dermatomycosis and provided Plaintiff with a three month prescription for a non-formulary medication named micostatin ointment. On September 28, 2006, Dr. Frontera changed the prescription to a formulary medication named nizoral ointment. On October 18, 2006, Dr. Frontera examined Plaintiff for complaints of pain in his ankles. Dr. Frontera assessed a normal healing process and recommended that Plaintiff obtain Tylenol from the prison store for pain.

On November 1, 2006, Dr. Frontera prescribed insoles for Plaintiff's shoes after he complained of numbness in the soles of his feet. Plaintiff received the insoles on November 23, 2006.

Plaintiff complained on February 20, 2007, that the insoles that he received caused him pain. The medical record shows that Plaintiff refused to attend a scheduled February 26, 2007, appointment. Dr. Frontera examined Plaintiff on March 6, 2007, and noted no abnormal findings. Plaintiff wanted to continue to use the insoles, instead of having the accommodation discontinued.

Dr. Frontera examined Plaintiff for complaints of genital spots on April 16, 2007. Dr. Frontera noted that he found no spots on the Plaintiff. New insoles were ordered for Plaintiff's shoes. Plaintiff was examined by a nurse on May 22, 2007. Dr. Frontera next examined Plaintiff on May 30, 2007. Dr. Frontera ordered wide box shoes for Plaintiff. Plaintiff visited with other health care staff until he next saw Dr. Frontera on August 16, 2007, for complaints of skin irritation. Dr. Frontera noted that he found normal skin texture and that no treatment was necessary. Dr. Frontera noted that Plaintiff did not agree with Dr. Frontera's assessment.

Plaintiff received shoes on August 22, 2007. On August 24, 2007, Plaintiff was examined by Dr. Frontera, who noted that Plaintiff walked normally and his shoes fit. Plaintiff returned his shoes to a nurse complaining that they were State issued shoes and that they did not fit. Dr. Frontera discontinued Plaintiff's Special Accommodation for shoes on August 28, 2007. Nurse Kroupa assessed Plaintiff on October 24, 2007, noting "[a]ltered skin integrity due to skin discoloration and skin changes over left lower abdomen; Difficulty getting accurate shoe size: Complains of numbness over both feet;"

On December 27, 2007, Dr. Frontera examined Plaintiff. This was Dr. Frontera's last contact with Plaintiff. Dr. Frontera noted that Plaintiff had refused the shoes previously offered and examination of Plaintiff's feet was normal with no swelling present. Dr. Frontera noted that Plaintiff was "furious" that there would be no renewed detail for shoes.

Both parties move for summary judgment. Dr. Frontera argues that there exists no genuine issue of material fact in dispute and Plaintiff argues that Dr. Frontera has failed to respond to the allegations in the complaint. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close,* 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant argues that Plaintiff cannot show a violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities

to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55. This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

It is undisputed that Plaintiff received consistent medical care from Dr. Frontera. Plaintiff complains that Dr. Frontera caused a delay in removing his casts and that Dr. Frontera ignored the order from Dr. Granzhorn to remove the casts within five weeks. Clearly, Dr. Granzhorn was involved in placing Plaintiff's casts and removing the casts. Since Dr. Granzhorn was a specialist, Dr. Frontera deferred the treatment of Plaintiff's fractured feet to Dr. Granzhorn. There is nothing in the record that establishes that Dr. Frontera ignored any orders from Dr. Granzhorn. Any delay in the removal of the casts was not the fault of Dr. Frontera. Dr. Frontera did not schedule the dates that Dr. Granzhorn examined Plaintiff. Dr. Frontera simply made a recommendation or referral for Plaintiff to see Dr. Granzhorn. Moreover, contrary to Plaintiff's allegations, there is no support in the medical record that there was a harmful delay in the removal of the casts. Plaintiff has merely speculated that there was a delay. Further, Plaintiff has simply speculated that the alleged delay caused permanent injuries. Plaintiff has presented no medical evidence in support of this claim.

Similarly, Plaintiff complains that he was effectively not provided pain relief, because he was allergic to Ibuprofen. Plaintiff was provided with Ibuprofen and Tylenol throughout the course of his treatment with Dr. Frontera and other health professionals. There is no documented medical evidence that Plaintiff was allergic to Ibuprofen. Moreover, Plaintiff was provided with Tylenol and had the opportunity to purchase pain relief medication at the prison store. Plaintiff cannot show that Defendant Dr. Frontera was deliberately indifferent to Plaintiff's need for pain relief. Plaintiff's complaints about the shoes or insoles that Dr. Frontera prescribed do not support an Eighth Amendment claim of deliberate indifference to a medical need. Dr. Frontera prescribed these accommodations because Plaintiff made subjective complaints of foot pain. Clearly, Dr. Frontera was attempting to provide Plaintiff relief from his foot pain. Plaintiff cannot support an

Eighth Amendment claim by simply alleging that he was unhappy with the results of these accommodations. Further, Plaintiff cannot support his claims that Dr. Frontera failed to attend to Plaintiff's skin care needs. Dr. Frontera assessed Plaintiff with dermatomycosis and prescribed ointment. Plaintiff's assertion that Dr. Frontera violated Plaintiff's Eighth Amendment rights is not supported by the record.

Plaintiff alleges that Dr. Frontera retaliated against him by refusing to examine him after he complained of skin rashes. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted by Defendant, Plaintiff has not alleged any specific facts in support of this claim. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo*

*v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. Moreover, contrary to Plaintiff's assertions, Dr. Frontera did examine Plaintiff and provided treatment for Plaintiff's skin irritation claims. On two occasions, Dr. Frontera did not provide any treatment because he indicated that treatment was not appropriate or necessary after he examined Plaintiff for his skin rash complaints. Contrary to Plaintiff's assertions, that does not support a claim that his examination was cancelled or that he was not examined. Plaintiff's disagreement with Dr. Frontera's medical opinion is not adverse conduct that could support a claim of retaliation.

Accordingly, the court will grant Dr. Frontera's Motion for Summary Judgment (Docket #121) and dismiss this case in its entirety. In addition, the court will deny Plaintiff's Motion for Summary Judgment (Docket #106) as moot.

An Order and Judgment consistent with this Opinion will be entered.


Dated: 3/31/2011                                  _____*/s/ R. Allan Edgar*_____
                                                          R. ALLAN EDGAR
                                                          UNITED STATES DISTRICT JUDGE